IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ELI LILLY & CO.,<br>INCYTE CORPORATION and<br>INCYTE HOLDINGS CORPORATION,<br><br>Plaintiffs,<br><br>v.<br><br>AUROBINDO PHARMA LIMITED and<br>AUROBINDO PHARMA U.S.A., INC.,<br><br>Defendants. | C.A. No. 22-1114 (CFC)<br>ANDA CASE<br>(Consolidated; Lead Case) |
| ELI LILLY & CO.,<br>INCYTE CORPORATION and<br>INCYTE HOLDINGS CORPORATION,<br><br>Plaintiffs,<br><br>v.<br><br>MSN LABORATORIES PRIVATE<br>LIMITED and MSN<br>PHARMACEUTICALS INC.,<br><br>Defendants. | C.A. No. 22-1115 (CFC) |

**STIPULATION FOR DISCOVERY, INCLUDING DISCOVERY OF
ELECTRONICALLY STORED INFORMATION ("ESI")**

1. **General Provisions.**

    a. **Cooperation.** Parties expect to reach agreements cooperatively on how to conduct discovery under Fed. R. Civ. P. 26-36. In the event that the parties are unable to agree on the parameters and/or timing of discovery, the parties agree that

the following standards shall apply until further order of the Court or the parties reach further agreement.

  **b.** **Proportionality.** Parties will use reasonable, good faith, and proportional efforts to preserve, identify, and produce relevant information.[1] This includes identifying appropriate limits to discovery, including limits on custodians, identification of relevant subject matter, time periods for discovery, and other parameters to limit and guide preservation and discovery issues.

  **c.** **Preservation of Discoverable Information.** A party has a common law obligation and an obligation under the Federal Rules of Civil Procedure to take reasonable and proportional steps to preserve discoverable information in the party's possession, custody, or control.

   (i) Absent a showing of good cause by the requesting party, the parties shall not be required to modify, on a going-forward basis, the procedures used by them in the ordinary course of business to back up and archive data; provided, however, that the parties shall preserve the non-duplicative discoverable information currently in their possession, custody, or control.

   (ii) Absent a showing of good cause by the requesting party, the categories of ESI identified in Schedule A attached hereto need not be preserved.

---

[1] Information can originate in any form, including ESI and paper, and is not limited to information created or stored electronically.

    **d.**    **Privilege**.

    (i)    Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

    (ii)    Until a protective order is entered, information that contains privileged matter or attorney work product shall be immediately returned if such information appears on its face to have been produced or if notice is provided of production. Upon the entry of a protective order, the protective order will control.

**2.**    **Initial Discovery Conference**.

    **a.**    **Timing**. Consistent with the guidelines that follow, the parties shall discuss the parameters of their anticipated discovery at the initial discovery conference (the "Initial Discovery Conference") pursuant to Fed. R. Civ. P. 26(f).

    **b.**    **Content**. The parties shall discuss the following:

    (i)    The issues, claims and defenses asserted in the case that define the scope of discovery.

    (ii)    The likely sources of potentially relevant information (i.e., the "discoverable information"), including witnesses, custodians, and other data sources (e.g., paper files, email, databases, servers, etc.).

    (iii)    Technical information, including the exchange of production formats.

   (iv) The existence and handling of privileged information.

   (v) The categories of ESI that should be preserved.

3. **Initial Disclosures.** The parties exchanged initial disclosures pursuant to Paragraph 3 of the Delaware Default Standard on January 26, 2023.

4. **Initial Discovery in Patent Litigation.**[2]

 **a.** The Parties shall follow the January 12, 2023 Scheduling Order (D.I. 22) and any modifications or amendments thereto in making initial disclosures and document productions.

5. **Specific E-Discovery Issues.**

 **a.** **On-site inspection of electronic media.** Such an inspection shall not be permitted absent a demonstration by the requesting party of specific need and good cause.

 **b.** **Search methodology.** If the producing party elects to use search terms to locate potentially responsive ESI, it shall disclose the search terms to the requesting party. Absent a showing of good cause, a requesting party may request no more than 10 additional terms to be used in connection with the electronic search. If the producing party does not agree to include the additional search terms, the Parties shall meet and confer in good faith regarding the request. Focused terms, rather than over-broad terms (e.g., product and company names), shall be employed.

---

[2] As these disclosures are "initial," each party shall be permitted to supplement.

The producing party shall search (i) the non-custodial data sources identified in accordance with paragraph 3(b); and (ii) emails and other ESI maintained by the custodians identified in accordance with paragraph 3(a).

      c.      **De-Duplication**.  The Parties shall make reasonable efforts to de-duplicate ESI.  ESI may be de-duplicated vertically within each custodian or horizontally across custodians.  All ESI will be de-duplicated using MD5 or SHA1 Hash values, or other industry-standard de-duplication method.  All files bearing an identical Hash value are a duplicate group.

      d.      **Format**.  The parties shall produce their information in the following format: single page TIFF images and associated multi-page text files containing extracted text or OCR with Concordance and Opticon load files containing all requisite information including relevant metadata.

      e.      **Native files**.  The only files that should be produced in native format are files not easily converted to image format, such as Excel files and other spreadsheets, PowerPoint presentations, audio files, video files, and Access files, except to the extent that such documents require redaction, in which case such documents may be produced as redacted TIFF images or with native redactions.

      f.      **Metadata fields**.  The parties shall provide the following metadata for all ESI produced, to the extent such metadata exists: All Custodians, File Path, Email Subject, Conversation Index, From, To, CC, BCC, Date Sent, Time Sent, Date

Received, Time Received, Filename, Author, Date Created, Date Modified, MD5 Hash, File Size, File Extension, Bates Number Begin, Bates Number End, Attachment Range, Attachment Begin, and Attachment End (or the equivalent thereof). No party is required to manually generate metadata.

| MORRIS, NICHOLS, ARSHT & TUNNELL LLP | KRATZ & BARRY LLP |
|---|---|
| /s/ *Jeremy A. Tigan* | /s/ *R Touhey Myer* |
| Jack B. Blumenfeld (#1014)<br>Jeremy A. Tigan (#5239)<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, DE 19899<br>(302) 658-9200<br>jblumenfeld@morrisnichols.com<br>jtigan@morrisnichols.com<br><br>*Attorneys for Plaintiffs Eli Lilly & Co., Incyte Corp., and Incyte Holdings Corp.* | R Touhey Myer (#5939)<br>800 North West Street<br>Wilmington, DE 19801<br>(302) 527-9378<br>tmyer@kratzandbarry.com<br><br>*Attorneys for Defendants Aurobindo Pharma Limited and Aurobindo Pharma U.S.A., Inc.* |
| | COZEN O'CONNOR |
| | /s/ *Kaan Ekiner* |
| | Kaan Ekiner (#5607)<br>1201 North Market Street, Suite 1001<br>Wilmington, DE 19801<br>(302) 295-2046<br>kekiner@cozen.com<br><br>*Attorneys for Defendants MSN Laboratories Private Limited and MSN Pharmaceuticals Inc.* |

February 23, 2023

SO ORDERED this 23rd day of February, 2023.

_____
The Honorable Colm F. Connolly
Chief United States District Court Judge

## SCHEDULE A

1. Deleted, slack, fragmented, or other data only accessible by forensics.

2. Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

3. On-line access data such as temporary internet files, history, cache, cookies, and the like.

4. Data in metadata fields that are frequently updated automatically, such as last-opened dates.

5. Back-up data that are substantially duplicative of data that are more accessible elsewhere.

6. Voice messages.

7. Instant messages that are not ordinarily printed or maintained in a server dedicated to instant messaging.

8. Electronic mail or pin-to-pin messages sent to or from mobile devices (e.g., iPhone and Blackberry devices), provided that a copy of such mail is routinely saved elsewhere.

9. Other electronic data stored on a mobile device, such as calendar or contact data, or notes, provided that a copy of such information is routinely saved elsewhere.

10. Logs of calls made from mobile devices.

11. Server, system or network logs.

12. Electronic data temporarily stored by laboratory equipment or attached electronic equipment, provided that such data is not ordinarily preserved as part of a laboratory report.

13. Data remaining from systems no longer in use that is unintelligible on the systems in use.

A-2